NORTH COAST COMMERCIAL
ROOFING SYSTEMS, INC.,
Appellant

v.

RMAX, INC., Appellee.

No. 05–03–01328–CV.

Court of Appeals of Texas,
Dallas.

March 23, 2004.

J. Michael Heinlen, Dallas, for Appellant.

Amy Vandeloo, Ben Mesches, Victor D. Vital, Haysnes and Boone, L.L.P., Dallas, for Appellee.

Before Justices MOSELEY, O'NEILL, and RICHTER.

## OPINION

Opinion by Justice O'NEILL.

Appellant North Coast Commercial Roofing Systems, Inc. (North Coast) appeals the trial court's order denying its special appearance. In a single issue, North Coast contends the trial court should have granted the special appearance because it does not have sufficient minimum contacts with Texas to support personal jurisdiction. For the following reasons, we affirm the trial court's order.

North Coast is an Ohio corporation with its principal place of business in Twinsburg, Ohio. Appellee RMAX, Inc. is a Texas corporation with its principal place of business in Dallas, Texas. In 2002, North Coast contacted RMAX's South Carolina satellite plant about purchasing R–Deck material from RMAX. Yvonne Callahan at the South Carolina plant told North Coast that the South Carolina plant did not manufacture, sell or ship R–Deck and that all inquiries and orders regarding R–Deck had to be made to Texas. North Coast nevertheless ordered R–Deck from RMAX through Callahan. RMAX shipped the R–Deck to North Coast from Texas, where it had been manufactured. According to RMAX, North Coast purchased the R–Deck on a credit account that had previously been established. Specifically, in 1986, North Coast had solicited RMAX in Texas to open a credit account for North Coast so North Coast could distribute RMAX's products. North Coast negotiat-

ed with RMAX's Texas office regarding the credit account.

RMAX subsequently sued North Coast in Texas state court asserting it had failed to pay the full contract price for the R– Deck. RMAX asserted specific jurisdiction existed over North Coast because it did business in Texas. North Coast filed a special appearance asserting no personal jurisdiction existed because it did not do business in Texas and the dispute had no connection with Texas. The trial court denied the special appearance.

■ A Texas court may exercise jurisdiction over a nonresident defendant if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with the due process clause of the United States constitution. *See BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 795 (Tex.2002). The Texas long-arm statute permits Texas courts to exercise jurisdiction over a nonresident that "does business" in Texas. Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 1997). The long-arm statute defines "doing business" as (1) contracting by mail or otherwise with a Texas resident with performance either in whole or in part in Texas, (2) commission of a tort in whole or in part in Texas, or (3) recruitment of Texas residents, directly or through an intermediary located in Texas. *Id.* The broad language of the long-arm statute permits a Texas court to exercise jurisdiction as far as the federal constitution will permit. *Marchand,* 83 S.W.3d at 795. Consequently, in determining whether jurisdiction exists, we need only determine whether the exercise of jurisdiction comports with the due process clause of the United States Constitution. *See City of Riverview, Michigan v. Am. Factors, Inc.,* 77 S.W.3d 855, 857 (Tex.App.-Dallas 2002, no pet.).

■ The due process clause of the federal constitution permits a court to exercise jurisdiction over a nonresident defendant if (1) the defendant has purposefully established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Federal due process requires the defendant to "purposefully avail" itself of the privilege of conducting activity within the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The defendant's activities must justify a conclusion that the defendant could reasonably anticipate being haled into a Texas court. *Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 806 (Tex.2002), *cert. denied,* 537 U.S. 1191, 123 S.Ct. 1271, 154 L.Ed.2d 1025 (2003).

■ A defendant's contacts with a forum state may give rise to either general or specific jurisdiction. *Marchand,* 83 S.W.3d at 795–96; *Rittenmeyer v. Grauer,* 104 S.W.3d 725, 729 (Tex.App.-Dallas 2003, no pet.). In this case, RMAX is asserting only specific jurisdiction existed over North Coast. Specific jurisdiction exists if the defendant's activities have been "purposefully directed" to the forum and the litigation results from injuries arising out of or relating to those activities. *Magic House AB v. Shelton Beverage L.P.,* 99 S.W.3d 903, 908 (Tex.App.-Dallas 2003, no pet.); *see also Rittenmeyer,* 104 S.W.3d at 729. The defendant's purposeful conduct, not the unilateral acts of the plaintiff, must have caused the contact. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 & n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Boissiere v. Nova Capital, L.L.C.,* 106 S.W.3d 897, 901 (Tex. App.-Dallas 2003, no pet.). In determining

specific jurisdiction, we focus on the relationship among the defendant, the forum, and the litigation. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 228 (Tex.1991).

The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Marchand,* 83 S.W.3d at 793. A defendant must then negate all bases for personal jurisdiction alleged by the plaintiff. *Marchand,* 83 S.W.3d at 793; *Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 203 (Tex.1985).

Whether a court has personal jurisdiction over a nonresident defendant is a question of law which we review de novo. *Marchand,* 83 S.W.3d at 794. However, a trial court's factual findings may be reviewed for legal and factual sufficiency of the evidence. *Id.* at 794. Once we have determined the evidence is sufficient to support the trial court's resolution of disputed fact issues, or if the relevant facts are not disputed, we examine de novo whether the facts negate all bases for personal jurisdiction. *Kelly Inv., Inc. v. Basic Capital Mgmt., Inc.,* 85 S.W.3d 371, 374 (Tex.App.-Dallas 2002, no pet.).

In this case, RMAX sued North Coast for breach of a contract in which North Coast agreed to purchase R–Deck from RMAX. RMAX presented evidence the R–Deck was purchased on a credit account that North Coast established with RMAX many years earlier. North Coast specifically solicited the credit account from RMAX's Texas office. Furthermore, before agreeing to purchase the R–Deck, North Coast was told that R–Deck was made only at the Texas plant and that all orders were made to Texas. Finally, the invoice RMAX used to bill North Coast for

the transactions showed that North Coast was required to remit payment to Texas and that any disputes would be governed by Texas law.[1]

We recognize that contracting with a Texas company and requiring payment in Texas do not alone necessarily establish sufficient minimum contacts to establish specific jurisdiction. *See U–Anchor Adver. Inc. v. Burt,* 553 S.W.2d 760, 763 (Tex.1977). Nor does a choice of law provision alone establish jurisdiction. *See Preussag Aktiengesellschaft v. Coleman,* 16 S.W.3d 110, 125 (Tex.App.-Houston [1st Dist.] 2000, pet. dism'd w.o.j.). However, we conclude these facts combined with evidence that North Coast purchased the goods by soliciting and obtaining credit from RMAX's Texas office are sufficient to show North Coast purposefully availed itself of the privilege of doing business in Texas. We conclude North Coast had sufficient minimum contacts with Texas to establish specific jurisdiction.

North Coast next contends any exercise of personal jurisdiction over it would offend traditional notions of fair play and substantial justice. We disagree. To determine whether the assertion of jurisdiction comports with fair play and substantial justice, we evaluate the defendant's contacts in light of (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial systems interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering substantive social policies. *Guardian Royal,* 815 S.W.2d at 228. Only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when the defendant has

---

1. North Coast does not dispute that these   terms were part of the contract.

purposefully established minimum contacts with the forum state. *Guardian Royal,* 815 S.W.2d at 231. Thus, when such contacts exist, a defendant must present a compelling case that the existence of other factors would render jurisdiction unreasonable. *Guardian Royal,* 815 S.W.2d at 230.

Here, Texas has an interest in resolving this dispute that involves North Coast's alleged failure to pay for goods manufactured in Texas by a Texas company. North Coast has not presented any evidence of any undue burden that would be placed upon it by being required to litigate here. Further, RMAX as a Texas company can obtain the most convenient and efficient relief in Texas. Finally, North Coast has not shown litigation in Texas would be inefficient or that any social policies of the several states would be adversely effected. We conclude North Coast has not presented a compelling case that the existence of other factors would render jurisdiction in Texas unreasonable. We resolve the sole issue against North Coast.

We affirm the trial court's order.